# United States Court of Federal Claims

No. 18-803 C
(Filed Under Seal: July 31, 2018)
(Reissued: October 9, 2018)

_____

**OCEAN ASSOCIATES, INC.,**

    *Plaintiff,*

**v.**

**UNITED STATES OF AMERICA,**

    *Defendant,*

**v.**

**EARTH RESOURCES TECHNOLOGY, INC.,**

    *Defendant-Intervenor,*

**v.**

**TECHNICAL ENGINEERING SUPPORT ALLIANCE,**

    *Defendant-Intervenor*.

_____

    *Jason Nicholas Workmaster, Esquire*, Covington & Burling LLP, Washington D.C., for plaintiff.

    *Tanya Beth Koenig, Esquire*, U.S. Department of Justice – Civil Division, Washington, D.C., for defendant.

    *Ronald Stuart Perlman*, *Esquire*, Holland & Knight LLP, Washington, D.C., for defendant-intervenors.

# ORDER AND OPINION[1]

**HODGES,** *Senior Judge*

Plaintiff, Ocean Associates, Inc., challenges the inclusion of defendant-intervenors, Earth Resources Technology, Inc. and Technical and Engineering Support Alliance in the competitive range for a solicitation issued by the National Oceanic Atmospheric Association ("NOAA"). NOAA is an agency of the Department of Commerce. Plaintiff contends that NOAA included the intervenors improperly because they flouted the page limitation through their use of tables.

Plaintiff filed a Motion for Judgment on the Administrative Record. Defendant filed a Motion to Dismiss and a Cross Motion for Judgment on the Administrative Record. For the reasons set forth below, we grant defendant's Motion to Dismiss for lack of subject matter jurisdiction and deny the Motions for Judgment on the Administrative Record as moot.

## BACKGROUND

A. The Solicitation

NOAA issued a solicitation in January of 2017, to procure professional and technical services for the Agency's Fisheries. NOAA intends to award multiple indefinite delivery, indefinite quantity contracts with a total possible award value of $3,000,000,000. The solicitation included a two-year base contract with three one-year option periods.

---

[1] We issued this Opinion, under seal, on July 31, 2018, and invited counsel to propose redactions prior to publication. The parties responded with redactions and arguments in a Joint Status Report. Defendant and intervenor were concerned about mention in the Opinion of the number of total offerors, the number of offers in the competitive range, the identities of other offerors, and the evaluation ratings of offerors in the competitive range. Plaintiff proposed wide-reaching redactions including most of the evaluation information and any text which quoted the original evaluation.

According to the Federal Circuit, courts deciding on requests for redactions by the parties should apply a "presumption of public access to judicial records." *Baystate Techs., Inc. v. Bowers,* 238 Fed. Appx. 808, 810 (Fed. Cir. 2008). The parties redactions are overly-broad and they have provided no rational that overcomes the presumption of public access. The agency's adjectival ratings, for example, assigned to various aspects of a particular proposal, are routinely given public access in these cases. No competitive advantage or disadvantage arises where the Government's evaluation, in the form of quotations and ratings, or the number of offerors becomes part of the public record. The proposed redactions by the parties are all rejected.

The work outlined in the solicitation and expected of the contractor included thirty-seven subtasks falling into four main areas: (1) studies, analyses, and reports; (2) applied research, engineering, consulting, and operations; (3) field sampling, data collection, and surveys; and (4) consulting, program, and program management. Offerors were instructed that they could be considered for an award without "providing capability for the entire array of efforts set forth in the [Statement of Work]." AR 510.

The solicitation set forth detailed instructions how the proposals were to be formatted. Proposals were to be on 8.5 x 11 inch paper with one inch margins, single-spaced, with paragraphs separated by at least 6-point spacing. AR 500. They were required to contain text in Times New Roman 12-point font, but provided that a reduced font size not less than 8-point was permitted for "Tables and Illustrations." AR 500. The solicitation also stated that "[o]fferors whose proposals do not follow all instructions may be deemed '[n]oncompliant' and disqualified from further evaluation." AR 498.

Each individual volume of the proposal was subject to specified page limitations. At issue is Volume II, which addresses Evaluation Factor 1: "Corporate Experience and Commitment," and was limited to twenty-five pages of text, tables, and illustrations. AR 500. Offerors were asked to describe their "breadth and depth of experience and qualifications working within the requirements of the [Statement of Work]." AR 503. Past commitment and experience would be considered, but the solicitation noted that "[e]valuation of technical experience will also be based on proposed methods for establishing, organizing and performing logistics related aspects of this requirement." AR 504.

The solicitation did not specify the total number of expected awards, but instead noted that it would make a "manageable number of awards . . . to ensure adequate competition at the task order level and to allow for the small business reserves." AR 510. It also stated that "[o]fferors with limited capability may obtain a contract if they are the only firm or highly beneficial for a part of this domain." AR 510.

NOAA stated that the award would be made on a best value basis by the "Highest Technically Rated Offerors with a Fair and Reasonable Price." AR 509. In other words, "an Offeror whose proposed prices are determined not to be fair and reasonable will not be awarded a contract regardless of the Government's evaluation of the non-price factors of the Offeror's proposal." AR 509. However, three non-price factors "when combined, are significantly more important than cost or price." *Id.* Those non-price factors were listed as (in descending order of importance): Factor 1, Corporate Experience and Commitment; Factor 2, Management Approach; and Factor 3, Past Performance. *Id.*

Regarding the first non-price factor, Corporate Experience, the solicitation indicated that offerors would be evaluated based on the extent of their demonstration of "the qualifications and corporate experience in performing work of the same or similar nature as that of the requirements of the SOW." AR 510. NOAA stated it would evaluate

the Management Approach based on "the extent to which the Offeror's management and organization demonstrate sound and reasonable business practices with respect to managing this contract." *Id*. Past Performance was to be evaluated "based on the relevance and quality of the Offeror's and proposed subcontractors' past performance as it relates to the probability of successfully accomplishing the solicitation requirements. AR 510–11.

B. The Proposals

NOAA received twenty-six timely proposals. Plaintiff's and intervenors' Volume II proposals are the relevant aspects of the procurement in this case

Earth Resources Technology, Inc.'s Volume II contains twenty-five pages. Of those twenty-five pages, approximately twelve are covered with one-column tables. The tables consists of paragraphs and headings printed in 8-point font and do not contain space between paragraphs or headings and text, meaning the proposal contained more text than it would have been able to had the offeror removed the lines around the language. The additional text is attributable to the smaller font size, the lack of spaces between the headings and the descriptions, and the lack of space between paragraphs.

Technical and Engineering Support Alliance employed essentially the same device. It included approximately twelve pages of a table with a single column, in Calibri 8-point font. This allowed Technical and Engineering Support Alliance to include more text than it could have if the information were formatted according to the guidelines for non-table text.

Plaintiff did not submit any lengthy tables in Volume II of its proposal. The majority of its document contains text in the appropriate 12-point Times New Roman, as required by the solicitation.

C. The Evaluation and Competitive Range Determination

The Contracting Officer reviewed the proposals for compliance and determined that eleven of the twenty-six were noncompliant. The Contracting Officer determined that plaintiff's proposal was noncompliant because it did not include an organizational conflict of interest mitigation plan or statement. AR 5461. None of the offerors was disqualified for failure to follow all instructions or for improper formatting.

NOAA's Source Evaluation Board considered all proposals and created consensus evaluations for each offeror. Plaintiff's evaluation resulted in a "Marginal" rating for Factor 1, an "Acceptable" rating for Factor 2, and an "Acceptable" rating for Factor 3. AR 5503; AR 5505; AR 5512. For Factor 1, out of the thirty-seven sub-tasks, plaintiff received weaknesses in twenty-six of them, six of which were significant. AR 5496–501. Plaintiff received a strength in one task: C.3.4.9. AR 5501–02. Of the twenty-six offerors, only plaintiff and intervenors received a strength for subtask C.3.4.9. AR 5502. Plaintiff met the requirements of the remaining ten subtasks. AR 5502. The "Marginal" rating for

Factor 1 was a result of a determination that the "proposal does not clearly meet requirements and has not demonstrated an adequate approach and understanding of the requirements. The proposal contains multiple significant weaknesses . . . The risk of unsuccessful performance is moderate to high." AR 5502.

The contracting officer engaged in a competitive range determination upon completion of the board's evaluation, and concluded that seventeen offerors should remain in the range, including both intervenors. Plaintiff was excluded from the competitive range. AR 5656. The competitive range determination provided the following explanation for Plaintiff's exclusion:

> OAI's Factor I rating was Marginal and was not considered among the most highly rated proposals. In addition, for Factor II, while not as important as Factor I, OAI's rating was Acceptable, which was not sufficient given the lack of depth identified in their Factor I proposal and given that it did not offer more benefits than other proposals under Factor II. Lastly, Factor III, is the least important non-price factor and [another offeror] was the more highly rated Offeror with an Outstanding (OAI was rated Acceptable for Factor III).

AR 8241.

Earth Resources Technology, Inc.'s proposal received one significant weakness, eight weaknesses, one significant strength, twelve strengths, and met requirements for nineteen subtasks. AR 5532-39. ERT received the following ratings for Factors 1, 2, and 3 respectively: "Marginal," "Acceptable," and "Acceptable." AR 5642. Technical and Engineering Support Alliance received one significant weakness, eight weaknesses, eight strengths, and met requirements for twenty-one subtasks. AR 550-556. Technical and Engineering Support Alliance received the following ratings for the factors, respectively: "Marginal," "Acceptable," and "Outstanding." AR 5643.

  D. Government Accountability Office (GAO) Protests

Plaintiff filed a protest with GAO in October of 2017, challenging its exclusion from the competitive range. Plaintiff's protest was based on two grounds: (1) NOAA failed to consider price before excluding plaintiff from the competitive range; and (2) NOAA conducted an unreasonable and improper evaluation of Plaintiff's proposal under the Corporate Experience and Commitment factor. AR 8642. Plaintiff later supplemented the protest with an allegation that the intervenors violated the formatting requirements by an overuse of tables, and therefore the inclusion of the intervenor's proposals in the competitive range was irrational. AR 8261. GAO informed the parties that it would sustain the protest as to the pricing argument, but not on the other two grounds. NOAA took corrective action to address the pricing evaluation error and GAO dismissed the protest.

Therefore, NOAA's corrective action did not result in plaintiff's inclusion in the competitive range. Plaintiff then filed a second protest with GAO challenging its exclusion from the competitive range based on its assertion that intervenor's inclusion was improper due to formatting requirements. AR 8633-34. GAO informed the parties that it would not sustain the protest, and plaintiff withdrew the protest to file a complaint in this court. AR 8765.

## STANDARD OF REVIEW

In considering a motion to dismiss for lack of subject matter jurisdiction, we accept as true all uncontroverted factual allegations in the complaint, and construe them in a light most favorable to the non-moving party, plaintiff in this case. RCFC 12(b)(1). Plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.

## DISCUSSION

Defendant contends that this court lacks subject matter jurisdiction over plaintiff's claim because plaintiff cannot establish standing as an "interested party." While this court generally possesses subject matter jurisdiction over a plaintiff's claims alleging an agency's improper procurement actions, plaintiff must show that it has standing as a threshold jurisdictional inquiry.

The standing requirements in a bid protest are "more stringent than the standing requirements imposed by Article III of the Constitution." *Diaz v. United States*, 853 F.3d 1355, 1358 (Fed. Cir. 2017) (citing *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009)). Plaintiff has standing only if it is an interested party. "An interested party is an actual or prospective bidder whose direct economic interest would be affected by the award of the contract." *Orion Tech., Inc. v. United States*, 704 F.3d 1344, 1348 (Fed. Cir. 2013). Defendant does not contend that plaintiff is an actual bidder in the procurement solicitation at issue. Therefore, plaintiff has met the first prong of the standing requirement.

The second element of standing requires plaintiff to demonstrate that it was prejudiced by the agency's alleged error. *See Diaz*, 853 F.3d at 1359 (noting that to show prejudice, plaintiff must show that but for the agency's error, it "would have had a substantial chance of securing the contract") (quotations omitted) (citations omitted).

Defendant asserts that plaintiff has no direct economic interest because it has no substantial chance of winning the contract. Even if intervenors are removed from the competitive range, plaintiff's proposal would not prevail because removing intervenors would not remedy the deficiencies in plaintiff's proposal. Therefore, even if both intervenors were removed from the competitive range, plaintiff would not be included.

Plaintiff argues that if intervenors were removed from the competitive range, it would remain the only offeror with a strength for a specific subtask, namely C.3.4.9.

Therefore, according to plaintiff, NOAA would have no choice but to include plaintiff in the competitive range. This assertion is based on language in the solicitation stating: "Offerors with limited capability may obtain a contract if they are the only firm or highly beneficial for a part of this domain." AR 510. Defendant, however, points out that this language is permissive and therefore does not require NOAA to include any offeror in the competitive range, or even award a contract, for a "unique strength," i.e. where offeror is the only offeror with a strength in a specific subtask. In the context of the entire paragraph, it is clear that the purpose of this sentence is to explain that an offeror need not be capable of performing all of the subtasks, or to be the winning offeror in all the subtasks, to obtain some portion or even a single subtasks in the award.

Other offerors were "the only, or one of two, to offer a strength or significant strength for a particular element or group of elements for the statement of work (SOW)." AR 5644. Three of those offerors were omitted from the competitive range. AR 5647; AR 5652; AR 5650. Furthermore, eleven other offerors met the requirements for subtask C.3.4.9.

## CONCLUSION

Plaintiff has not shown that it has standing because NOAA's decision did not prejudice plaintiff in this case. It cannot establish that *but for* the Agency's alleged wrongful action, it would have a substantial chance of winning the contract. The alleged wrongful action is including intervenors in the competitive range. Therefore, we consider whether leaving those offerors out of the competitive range would result in giving plaintiff a substantial chance of winning the contract. NOAA's exclusion of intervenors from the competitive range would have no effect on plaintiff's chance of winning the contract because plaintiff's proposal contained other deficiencies which would remain deficient even after excluding intervenors.

Nor would it increase plaintiff's chances of being included in the competitive range. The language of the solicitation does not show that having a "unique strength" guarantees offeror a contract or even inclusion in a competitive range. NOAA has shown that it did not place offerors with "unique strengths" into the competitive range automatically. Further, removal of the intervenors does not alter the ratings of plaintiff's proposal and does not make it any more likely that plaintiff would be included in the competitive range. Plaintiff lacks standing, and we must dismiss plaintiff's complaint since we do not have jurisdiction over its claim.

For the reasons stated, defendant's Motion to Dismiss is GRANTED. The parties' Motions for Judgment on the Administrative Record are moot and therefore DENIED.

**IT IS SO ORDERED.**

s/*Robert H. Hodges, Jr.*

Robert H. Hodges, Jr.
Senior Judge